This is case number 4-12-0118, People's State of Illinois v. Mindy Walker. For the appellant, we have Darren Kimmel. For the appellee, we have attorney Anastasia Brooks. Mr. Kimmel, you may proceed. You may release the court. During most of the stop at issue here, Detective Rath stood off to the side by himself, flipping through a stack of papers he had obtained from the car's glove box. Only after Mindy had been secured by the two officers who were actually interacting with her, did he choose to put down that stack of papers, walk over, and then he decided to open and search her purse. As he said, to view... When he looked in the purse, was he aware that she had consented and then withdrawn consent? Yes, Your Honor. Actually, no, Your Honor. In his testimony, at one point, he admits that he found both facts out later, that she had initially consented and that she had later withdrawn it. He says, I didn't find that out until later, either fact. But at that point in time, he did admit that he had no indication that Mindy had a weapon, and that, in fact, should be dispositive here, that bit of testimony. This court should overturn the lower court's denial of the motion to suppress, therefore, for three reasons. He said he knew unequivocally that she did not have a weapon. The testimony was he had no indication that she had a weapon at the point that he decided to search her purse. I believe that the question was, did you have any indication that Mindy had a weapon at that point? And he said, no. That's the testimony. The first point is that no one stated any sort of belief that Mindy had a weapon. There's no testimony at all. Second, any potential threat from the purse was eliminated once Mindy was secured. And third, under Terry, Raff should have first at least tried to feel through the outside of the purse for any weapons contained inside. Well, if he felt through the outside of the purse and he couldn't identify what he was in the purse, felt something kind of hard, something might be a weapon, wouldn't that just give the police officer always the opportunity then to open the purse? Because you're not going to be able to tell exactly what you're feeling. It may, Your Honor, and that's... And you think that would be a better practice? I do, Your Honor, and that's exactly what the police officers in the First District Jackson case actually did. This is a practice that police officers in Illinois and throughout the country, at least some police officers, are already following. Well, it seems to me that's always going to give the police officer the right to open the purse because it just seems like in most instances they're going to feel something that they can't identify. It's possible, Your Honor, but it's the exact same analysis for a frisk of a person. And that's a necessary step because a Terry frisk, a Terry search, is an exception to the general probable cause requirement. It's a narrowly drawn exception and there have to be narrow boundaries to that. It's only what is necessary to find if the person is armed and dangerous. And so it's the exact same analysis. Your Honor, I could make the same statement about searching a body of the person, but that's what the law says and it's the same analysis for the purse. I'm having a hard time in my mind thinking that a pat down of a person is the same as a pat down of a purse. Legally, Your Honor, it should be the same. In practice, it may turn out to be different sometimes. As explained in the brief and as the Massachusetts case may explain in a fairly lengthy and compelling analysis, it may be that the specific container at issue has characteristics that prevent a good pat down. That's the same for bulky clothing. The U.S. Supreme Court and our Supreme Court has held that if characteristics of the clothing on the person make a frisk impracticable, officers can have the suspect remove an outer layer of clothing. It's just that they have to try the frisk first. And if there's special circumstances, they might not even need to try the frisk. It's just that those circumstances weren't present here. It's a good prophylactic measure to make sure that police have to at least try as a starting point to frisk the person or the purse. And this gets into dignity and privacy concerns. And there's also gender issues. For a male suspect, it's most likely that any personal items he's carrying are going to be on his purse. With a female suspect, it's more likely they're going to be in her purse. What if it's a hard body purse? Your Honor, if the purse itself cannot be frisked, if you cannot feel through it, or in the Pagan case, the bag was full of heavy metal objects, a robbery of an industrial park had just occurred, and so the police officers knew it was full of metal objects, they were making metal sounds, then a frisk is impracticable because they're all going to feel like weapons. Just as Your Honor, Justice Turner mentioned a moment ago, that there may be cases where that occurs. This was not one of them. This was an easy case. The officer, Sergeant Rain, testifies, the only evidence in the record about the purse, the purse was not admitted into evidence, that this was not a full evidentiary hearing. We just had the testimony of the two officers. The court never saw the purse. No one making a decision saw this purse. The only testimony is from Sergeant Rain, who says he believed the purse had soft sides, and that it was an average-sized purse. When you say impracticable, you mean then it would be permissible to go into the purse. Yes, Your Honor. If you had the other factors. Yes, Your Honor. Now let me ask you a question. It's hypothetical, but real. Next year. The case happens next year. The same case? Yeah. I'm not sure what would change between now and then, Your Honor. I think it's highly likely she's got a gun in the purse. Because we'll have to consider carry. I see, Your Honor. How is that going to change the law? I mean, I understand that this is, you know, we're now. But it leads into what a reasonable police officer does in circumstances which raise a degree of alarm, which snatching the purse back raises a degree of alarm. The question is, is it an alarm that shows the potential of a weapon, or is it more likely just she's feisty and irritated, and she didn't want him to find whatever else there is, et cetera? What are we going to do? Your Honor, I think it is a real concern, and I think generally concealing carry is going to cause a lot of legal headaches for us going forward. I hope the legislature can lay out some ground rules to help with that. I think the problem here, though, is that the testimony that we have is not enough. We have a generalized sort of concern. They say, we don't know what's in the purse. And the prosecutor here, I think, sums this up best by saying it a couple times at trial. He says, that purse could have had anything in it. We don't know what's in that. That's not enough. So it may be a year from now. It may be that the circumstances are different. Well, of course, 49 states have concealed carry. So this has to have come up in those states. I'm sure it's somewhere out there. Somebody's had this issue arise. Your Honor, on my third point, on the frisk of the purse, that issue, most states that have dealt with this issue, and it's not a majority, but most of the states that have had the specific issue come up have come out the way I'm advocating, that at least that first step, the frisk of a purse, should be the initial prophylactic step. It may be later on that it's insufficient. It may be that the purse is too bulky. There are too many items in it that could be weapons. But that's the starting point, just as with the frisk of a purse. But I want to turn back to my question. What if a police officer testified, and I understand that in this case the purse is in the trunk and this officer is somewhat distanced from whatever else is already going on, but she snatches the purse back, which may withdraw consent, or maybe you can't withdraw that consent after you've already surrendered the bag to a law enforcement official. She acts in the same way, and the police officer said, her behavior was such that I felt there was a risk. It was quite possible that there was nothing in the purse, but it was also possible that there was something. And on patrol, whether I'm accompanied by another officer or not, somebody that acts like that, that wants to conceal something from me, I'm going to have to look in the purse, or I'm going to have to frisk the purse. Let's say, yes, it should be that reasonable test first. Would that have been enough, assuming they did what was reasonable? Assuming this is a gun case. So he does what's reasonable, and then he finds it's a gun. I think that would definitely be much closer to the line. I might even put it over. This is certainly a close case, but I think Your Honor has pointed out a few things that distinguish this case from that scenario. One is the lack of testimony of belief. But you would concede that that behavior by a suspect would put a reasonable police officer on edge. I believe so, Your Honor. And the fact that these officers did not testify to that belief, to that edge, and also just the context of what happened here. None of the officers ever indicated or at least implied that they thought there might have been a weapon in the purse? No, Your Honor. In fact, the first suggestion of that comes from the prosecutor on cross-examination. Well, why does that make a difference? Well, our Supreme Court says that it does make a difference. In People v. Galvin, the exact same thing happened. So the Supreme Court has said if it comes out in cross-examination, it's not reliable. It's not cross-examination that's unliable. It's when the impetus for it comes from the prosecutor. The same thing happened there. The prosecutor at People v. Galvin, the prosecutor asked on cross-examination, did you have a fear for your safety? And the officer said yes, and that was the testimony. Nothing before that had anything to do with officer safety. But I think the thing is there were no articulable facts. It's a conclusion. I had fear for my safety. On what basis? Doesn't the officer have to articulate a reasonable basis to conclude he had a reason to fear for his safety? And here, at the time she was searched, her purse was searched, she was handcuffed. It's both, Your Honor. And here I think the handcuffing does separate this from some of the other cases in a direction that makes it even less objectively reasonable that there was a basis for the search. The recent People v. Brown case from the 1st District speaks to this. There, the suspect had been handcuffed, and the issue was that he might reach into his pockets. And so they frisked him, and the court said he was handcuffed. There's no way he could have reached for his pockets. Here, the purse was further away, and there were three officers right on top of this 90-pound woman. There's no way. The testimony by Sergeant Brown, he says unequivocally, there's no way she could have reached that purse. At that point, even if there had been an initial basis in effect. How are they supposed to get the driver's license? Just give it back to her, cross her fingers, hope that there's not a gun in there? Your Honor, there's no separate Fourth Amendment right to search a bag to obtain identification. Professor Wayne Lefebvre discusses this in his treaties. You have to have a basis first. So the police never talk about identification. It never comes up in the record. The state argues it, but it's not supported by anything in the record. It may be that they would have had to give the purse back to her. They move from this highly volatile situation in the middle of two active lanes of traffic, cars whizzing by at noon in the middle of the campaign. So I want to be clear. This is your position they should have given the purse back to her and allowed her to enter it to produce her own driver's license. That is the conduct that you think the police should have followed. Yes, Your Honor. The argument is not that they should have immediately given it back to her. They had the right to control the situation, and they did. They moved everyone to the nearby parking lot, calmed things down. They controlled the situation. They were investigating this other crime. They could have held it as long as they wanted to until the end of that investigation. But the police don't have a right to search a person or their possessions for identification. They could have charged her with obstruction of police officer if she refused to give it to them. That's not an issue here. She gave consent and revoked it, as is her legal right, as the U.S. Supreme Court has made clear. And then at that point? What did she say to withdraw her consent? It was a physical act, Your Honor. Did she say anything? No, Your Honor. She just took the purse back. And as I've said, she's a small person. She could not have physically overpowered any of these officers. There's nothing in the testament that says it was a particularly violent act. She just took the purse back. And then Sergeant Rain took it right back from her. And the evidence is also clear. She never tried to access the purse. Sergeant Rain made a slip of the tongue in saying, I told her not to reach back into the purse. Two pages later in his testimony, when asked, he said, Oh, actually, that was a mistake. She never tried to reach into the purse. So this isn't even an access issue. She just wants to hold the purse. She's crying. She's nervous. She may have just been involved in a car crash. And Officer Rath says it's clear that she's a little slow. She has cognitive disabilities. And he says that's apparent from the moment you start talking to her. And he's not even involved in this stuff. He, as I said, is off to the side. He can tell that just from listening in a little bit. So just the officer's behavior here does not demonstrate the objective circumstance, do not demonstrate that they were afraid of her and her purse. The testimony is that they were afraid because she was pacing back and forth. She might get hit by a car, and that would put all of them at risk. That was the safety concern here that they did discuss. In your brief, you write, Detective Rath wrote in his report that he searched Ms. Walker's purse for the presence of a weapon. How does that square with what your argument is today, that he had absolutely no thought whatsoever about her having a weapon in the purse? Your Honor, I think that's the closest fact we get to anything stating that they were concerned about a weapon. But their testimony, in addition to that, makes it clear that this was a generalized concern. When asked, he didn't bring that up in testimony. He had to be asked specifically about that by the defense counsel. Didn't you write that in your report? And he said, yes, we didn't know what was in the purse. There could have been anything in there. But when given the opportunity to say, I was worried there might be a weapon in her purse, he didn't say that. He said something quite different that, as the Flowers case makes clear, is probative of the determination of whether the officer's search was lawful or not. And Flowers found that it was not on very similar testimony to Officer Rath's admission here that he had no indication that there was a weapon. It seems like a small difference, but it's important to remember that Terry is an exception to the general probable cause requirement, and it has to be narrowly drawn as a result. There was no basis for search here. But I think we should discuss my second point, which is that even if there was some initial danger from the purse, once the purse is removed and she's secured, that danger evaporates. Now, there remains the question of identification. I've argued in the brief that that argument was forfeited for lack of record citation. But I think even as just an inference from the facts, I think it also doesn't stand up based on the context. It's important to note that Rath was not involved in the interaction with Mindy. He didn't speak to the two officers who were involved about his search of the purse. He just walked over and searched the purse. Rain has no memory of Rath doing that. And Rath did not tell his superior officers what he found from the purse until later, until they had already moved to the nearby parking lot. So the idea that this was a coordinated police plan to check for weapons and then give the purse back to Mindy so she could retrieve her identification, it's not only not supported anywhere in the record by any evidence, it also doesn't make sense in the context of Rath's actions. Rain was his supervisor, and the deputy chief presumably was both of their supervisors. He would have talked to them about this, since they were actually in charge of the situation, if that was his point. And I think the People v. Brown case is instructive here, where the suspect was handcuffed and the court said he couldn't have reached his pockets. Now, turning to my third point, under Terry, Rath should have first tried to feel the outside of the purse. There's no controlling case law on this issue. I've argued that it comes from Terry and its progeny, that it's extended to the purse. And as Justice Breyer said, purses are special containers. This is something of a gender issue. A woman's potentially embarrassing items are probably going to be found in her purse. And if we treat this as something that can be searched below a probable cause standard, which is generally the standard for containers found in cars, then we're allowing police to essentially rummage in any woman's purse in any traffic stop, and we should reject that proposition. Finally, I want to note that the court's brief mentioned that it cannot be told from the outside of the purse what was inside. As I've noted, the purse was not brought into evidence. The court never saw the purse. That had to be based on the testimony of the two officers. And the only testimony was that the purse had soft sides and it was average sized, and Officer Rain looked into it and saw nothing out of the ordinary. I took that statement of the trial court to mean the purse was opaque. Yes. Yes, Your Honor. And I think the sentence before in its factual findings speaks to that. The court was saying the officers were looking at the purse and something, something. I think the idea that they were looking at the purse speaks to this idea that they couldn't see into it. So that factual finding is not controlling for purposes of this risk issue. For all these reasons, this court should… Counsel, I noticed in your reply brief you brought up the inevitable discovery rule. Yes, Your Honor. And the state had never referenced it, at least as far as I can tell. Is that right? It's true, Your Honor. Below and on… And you say there's a forfeiture, but isn't case law pretty clear that a Medellin court can affirm a trial court's judgment on any ground appearing in the record? That's true, Your Honor, although courts have found that it's not just that it was forfeited. There's no record developed on this issue. And Illinois courts are clear on inevitable discovery that it must be affirmatively stated in the record. All the details, all the facts that support… Well, the Mitchell case that you, in fact, cited in your brief is an exception to that. It was never, the inevitable discovery rule was never referenced until appeal. I'm not sure exactly on Mitchell right now, Your Honor. The broader point I want to make, though, is that inevitable discovery depends on a clear record being developed. There can be no assumptions made for purposes of inevitable discovery. The record has to state, they impounded her car. They had her purse. We would have found it anyway. This record doesn't, we don't know what happened to the car. We don't know what happened to the purse. We know she was put into a police car to drive over to the parking lot. At that point, Gant would seem to say… Well, you also argue, though, that had they not found the cannabis, there would have been no field sobriety testing. There's nothing in the record to support that that I can see. How do we know these police officers, they got her stopped, she's anxious, she's slow, she's grabbed a purse away from him, she's been in a wreck, she's taking some prescription drug, she acknowledges that. How do I know they weren't going to give her a field sobriety test, regardless of whether they found any cannabis? Your Honor, I see my time has expired. May I briefly answer your question? Sure. Your Honor, I think it's not clear from the record. I think the facts point us in the direction that I had asserted in the brief, which is that Officer Rath said she seemed a little funny, but it wasn't enough to search her purse. He basically says that. I think inevitable discovery requires a clear record, and not just to support inferences. It has to say it as a matter of fact, and this record is going to gun this issue. Thank you, Your Honor. Thank you, Counsel. You'll have more time on rebuttal. Ms. Brooks? Thank you, Your Honors. May it please the Court and Counsel, my name is Anastasia Brooks and I represent the people in this case. First of all, with respect to the argument that the police did not reasonably fear that the defendant may have had a weapon concealed in her purse, the defendant relies most heavily on the admission of Detective Rath. He said that there was no indication that he saw that the defendant had a weapon. However, the defendant's brief also relies heavily on the fact that Detective Rath was not the person who was interacting with the defendant. In fact, that was instead Sergeant Rain, the person who had decided to handcuff her, because he saw her reaching for the purse after he instructed her not to do so. So the fact that one officer might not have enough knowledge to support the search, even though that officer was the person who in fact performed the search, does not invalidate what the other officers might have known or feared with respect to whether the defendant may have been armed. What testimony did Rain give that he had reason to believe that she was presently armed and dangerous to him? Your Honor, I do not recall the specific testimony in the record, but at least I would like to rely on the fact that there is at least the implicit belief, based on the decision to handcuff her, at least in part, for officer safety purposes. Now, the defendant claims that the only concern here was that somehow they might get hit by a car, but the defendant also points out that the officers intentionally separated her from her purse while she was being handcuffed. So there is the decision by the officers to make sure that she is unable to hurt the officers because she was handcuffed, and because also, especially equally important, that she is separated from that purse, which was, according to the report of Detective Rath, which was brought out, was searched for the presence of weapons. So there is enough in the record to show that these officers did fear attack. Is there enough in the record to show that it was apparent there was no weapon in the purse in the original opening of the purse when she at first gave consent? Your Honor, I do not believe that there was enough information from the original opening to foreclose the possibility that there would be no weapon, that there would be confirmed that there was no weapon, and therefore a terri-pat-frisk or further protected search for weapons would be unavailable to the officers. Rayne testified that he did not see a weapon in the purse when he opened it. Initially? Rayne, yes, Sergeant Rayne. He opened the purse when he got consent from her, and he testified he did not see a weapon in the purse. I'm sorry, Your Honor, I do not recall that specific testimony. And he never testified, Rayne never testified that he had any reason to believe that she was armed and dangerous. There was no testimony, no question was asked of him regarding that. Even if he was not asked, the State's position is that it was at least an implicit, the belief was implicit because of his actions in handcuffing her and separating her from the purse, and also the report of Detective Rath which was brought out that shows that the purse was checked for weapons. So this was the intent of the officers, was to protect themselves from possible attack. So what you're saying, they don't even have to testify that they were afraid for their personal safety and wanted to search her purse to discover whether or not a weapon was there. In order to sustain a terrorist search. The State's response was to the defendant's claim that they had essentially admitted that they had no fear of a possible attack from weapons. That was the defendant's claim, and they were trying to cite to another case where the officer candidly admitted that there was no concern about weapons. Well, this is a different situation. There was concern about possible weapons. Who testified to that? Well, the officer testified that he had handcuffed her and that the purse was taken away from her. Right, and Rain testified that she was walking into traffic, they were afraid she was going to get hit by a car, and that they might get hit by a car because they were trying to protect her safety from the traffic. But the concern was for safety for everyone, not just for the defendant. I agree with that, but it was safety from the traffic, not from a weapon. Rain never testified he thought she had a weapon, and neither did Rath. But once they move out of the traffic situation, then essentially, according to that logic, they would have to unhandcuff her and give her back her purse. Because if the traffic was the only threat to the safety of the situation, then once they're moved out of the traffic, then I would assume the defendant's argument would be that she should have been unhandcuffed at that point. The purse was searched before the move out of the traffic. I do not recall whether that was the case, Your Honor. I don't know specifically, so I can't respond to that question. Well, she was sitting on the bumper of the car handcuffed with her hands behind her back when Rath came around from the side of the car and searched her purse. You don't recall that from the record? Not specifically, I'm sorry, Your Honor. All right, go ahead. The defendant claims the pat-down is a necessary step, but yet in the case cited by the state, Christensen, the defendant is fumbling in the pocket in the Christensen case, and the officer reached in and pulled out the contents. There was no pat-down, but they affirmed, this court affirmed. So it's not, the defendant doesn't have a specific case that says that if there is, in fact, no pat-down, there's simply an opening of a container like a purse, that that invalidates a Terry Frisk or a protective search for weapons. As well as the fact that the defendant's fumbling in the pocket was enough to make it a reasonable belief and an articulable fact to support the protective search in Christensen, the defendant's reaching for the purse, despite being instructed not to do so, would be similarly an articulable fact that would make it reasonable for the officers to peer attack. So, with respect to the next issue, the defendant's relying on the Tiffany O. case from Arizona to claim that officers had no reason to search the purse while she was handcuffed because it was unavailable for her to reach it and obtain any weapons inside. But yet, Lineman was the case from Wisconsin that specifically distinguished that argument in that case. Because in the situation where, as the defendant emphasized, this is not an arrest situation. This is a temporary detention. But the defendant also claims somehow that the police could have held on to her purse in perpetuity. Well, temporary detentions have to be, Terry stops have to be limited in time. So it's not a situation where a police could have simply sat there forever, waiting some sort of further development to happen. They need her identification to proceed with the stop. She's refusing to give them either consent to reach in and get that identification from her purse, and she's sitting there handcuffed and the police have the purse on the bumper. Nothing further can happen. Meanwhile, time's ticking away on this temporary detention. So in order to move the process forward, they had to essentially clear that purse for weapons before they could proceed with the temporary detention. So what the police did was reasonable, and what the defense position is essentially advocating is what essentially the Lineman court said you're not supposed to have, which is officers should not have to take unnecessary risks in performing their hazardous duties. What about the fact that it's the middle of the day, there are three officers on the scene, and they're in the middle of a street with traffic flowing on both sides, and she's 90 pounds and 5'3"? Well, the facts could be better for the state in the sense that the passengers had outnumbered the police or the passengers had physical characteristics that made them more dangerous to the police. The fact that she is of a particular height, weight, and handcuffed, and there are extra officers than people stopped at the scene, does not foreclose the possibility still that whatever is in that purse, which could be a weapon, might pose some risk of harm to the officer. There's no evidence it's a high crime area. It's daylight. Exactly. Daylight. Plenty of public around. Exactly. There are factors in favor of the defendant, but yet that does not foreclose the possibility that there may be a weapon that could harm one or more of those officers if the defendant had in her excited state. Wouldn't you say that is true in any case where an officer makes a traffic stop? He doesn't know when he walks up to the driver's door whether that person has a weapon or not? Well, in this situation, there were additional facts that caused officers to fear, which was the defendant's excited state, which was unusual enough, rather than just being the typical someone in the presence of police officers may be nervous. So you keep saying that the officers were afraid. They were in fear, but no officer testified to that. If Your Honor is correct, not specifically testified to that, but the actions that they took in response to the defendant's actions. Why couldn't it just be that Rath was curious? She obviously wanted her purse back. Maybe he was curious, wasn't he? He said he was curious about what was in there that she wanted so badly. The challenge of conduct here is the officer opened the purse. The question on appeal, essentially, is was that objectively reasonable and lawful? A claim that the defendants might make, which is that the officer had another motive, for example, subjective motive, because of curiosity, for example, to see what she happened to be reaching for. Additional subjective motivations do not invalidate an objectively reasonable, supported action that the police officers take. Could you just hone in a little bit more on that? And here's what I'm getting at. Are we to consider whether the officer thought there was a 10% chance there was going to be a weapon, 50% chance, or is the officer justified looking in the purse to make sure 100% that there's not a weapon? What is it that this court needs to consider? What's the standard? The standard is reasonable suspicion. Of what? That the defendant may be armed and dangerous. Armed and dangerous. Presently armed and dangerous, and you have to be able to articulate your reasons for believing that. Exactly. What reasons were articulated by any of the officers, either of the officers who testified? Well, as the State already said, the fact that she was in this excited state, and that she was reaching for the purse despite being instructed not to do so. And that's it? I mean, his officer made also a claim, I think, not to put her hand back in the purse, so that there's some reference that she may have her hand in it. Right, but he corrected that statement. He corrected that statement later. I don't remember, Your Honor. Essentially, it would be like that. So what you're telling me is if the officers looked in the purse, didn't think there was a weapon, but just to make sure that there wasn't a weapon, you lose them, right? I'm sorry, Your Honor. That wouldn't be reasonable suspicion, just that. Pretty sure there's not a weapon in there. After all, they'd already opened it and had a cursory glance. They're pretty sure, but they're not 100% sure. But for their own safety, they want to make it. They want to be 100% sure. That makes your case a loser, I guess, because that would not be reasonable suspicion. No, Your Honor. The fact that it had been, if there had been a cursory search performed, it's not equivalent to actually the pat-downs, that in which the officer feels no hard objects and is satisfied that there is no. . . Well, when they originally opened it, I would say, based upon what he said, it was certainly more likely than not that there wasn't a weapon in there. Is that a fair characterization of his testimony? I'm not sure if that's a fair characterization because I don't specifically remember the testimony you're referring to, Your Honor. But essentially, under like Christian said, if fumbling in the pocket is enough, it's not a very high standard. And it should not be a high standard because here the importance is the safety of officers and the ability to protect themselves from possible threats of harm. And it should not be an exceedingly high likelihood because there may be cases where the officer fears a lawsuit if they decide to conduct a tariff risk in a borderline case and to their detriment. . . Suppose this Court were to find that the marijuana would have been inevitably discovered anyway. Do you agree with the counsel since the State has not argued that that is a forfeited argument? Forfeiture is not a binding on this Court and this Court can affirm on any basis supported by the record. So the question then gets down to, I think as the defendant says, whether inevitable discovery is supported by the record. Well, he cites a Supreme Court case that says where the State doesn't argue inevitable discovery, it's forfeited. So I don't know how much authority this Court would have to simply reject that Supreme Court case. My understanding of the law is that forfeiture is not a bar on this Court's ability to decide a case on the grounds that has been agreed by a party. Also, I'd like for you to . . . Suppose we find that the police should not have looked in that person, therefore the cannabis was appropriately suppressed. Does that mean we reverse outright or would we remand? And the reason I ask is, was the case developed in front of the trial court to ascertain whether, even if the cannabis was not discovered, the police would have proceeded to give field sobriety tests and essentially what I'm saying is, even without the cannabis, could the State unremand, still charge, and perhaps succeed on a DUI offense? Well, the State's response is that the request for outright reversal, this is not a possession case, so suppressing cannabis does not eliminate the State's ability necessarily to prove the case. So, because it's not a possession case, I think it would be inappropriate for outright . . . I think he said in his reply brief, though, that the State didn't respond to what he said in the initial brief, which was that we want an outright dismissal, and that the State doesn't respond, and so therefore it's waived. I guess you disagree with that. I don't remember specifically that. The last point I'd like to try to make is that the words of the trial court was, it cannot be told from the outside whether there were weapons. The trial court's not specifically saying that the officers could not see whether there were weapons inside. It's just that it cannot be told from the outside. So taking the trial court's words on their face, that is a finding that it cannot be told, essentially by any means, from the outside, whether there were any weapons, because the trial court did not limit the scope of that finding. So it's . . . here the defendant's claim is the only evidence in the record is that the purse had soft sides, but yet the trial court does not have to accept any of the testimony, and when Officer Rapp did not recall, and he was essentially unsure whether the purse had soft sides, he said he would leave that. Well, the trial court's not bound to accept that testimony, and it's a stretch to say that that somehow makes it the trial court's contrary finding against the manifest weight of the evidence, and thereby not . . . and does not bind this court on review. So essentially the defendant's arguments about whether pat frisks of purses . . . of soft purses is required versus hard-sided purses, for example, this court shouldn't even need to reach that issue, because this court would be bound by the trial court's factual finding, unless it can find on this record, which is where the purse has not been in the evidence, and there's only a very brief testimony, it's uncertain, and the officer doesn't recall, that that somehow becomes against the manifest weight. So for those reasons, the state requests this court to affirm the trial court's judgment, and I'll entertain any further questions. I don't see any. Thank you, Ms. Brooks. Mr. Kimmel. May I please report? Go ahead, sir. The testimony and context here clearly show that Rath was simply curious. He stated that he wanted to see what was in Mindy's purse. This is anathema to the standard the state needs to meet here, which is something more than this generalized concern. It needs to show that there was a reasonable suspicion of a weapon. The testimony does not show that. It shows the opposite, and the context does not support an objective determination that that was the case, even over the officer's testimony to the contrary. Now, on Raines, Raines did originally open the purse. He was the first one to look into the purse, as Your Honor noted in Justice Pope, and he, quote, saw its contents for the most part and said that he saw nothing out of the ordinary. This court could also decide the case on that testimony, that evidence, that essentially at that point any concern over the contents of the purse should have evaporated. That also speaks to the state's point that this court should make some sort of amalgam of the officers' different experiences, even though they're not talking to each other. If this court is willing to entertain that suggestion, then it should also link up Raines' initial look into the purse, not finding anything in Rath's later testimony that he wants to see what's inside the purse. It should cut both ways. Now, I think one key to this case is the comparison of the state's preferred case, People v. Christensen, by this court, and the later case by this court distinguishing Christensen, People v. Cox, which Your Honor, Justice Connacht, concurred in that decision. Cox distinguishes Christensen on the exact issue that we've been talking about here, this presence of testimony of belief in a weapon. In Cox, there was no such testimony. In Christensen, there was that testimony. The officer stated that he thought the defendant, fumbling in his pocket, he thought he had a weapon in his pocket, and he believed that his safety was in danger on that precise basis. This court held that that was enough for the officer to grab a protruding bag out of the suspect's pocket. In Cox, that was missing, that testimony, and this court said that this is different from Christensen, precisely because we don't have that testimony of belief. That's this case. We don't have that testimony of belief. This court should follow the Cox decision, and Christensen is easily distinguishable on that basis. Your Honor, the purse was in fact searched before they moved everyone to the parking lot. That occurred in the middle of traffic. Mindy was handcuffed behind her back. That's when the purse search occurred. And to Your Honor's point, there were three officers on the scene, and that undercuts the objective reasonableness. Even if we look away from the testimony, we could also affirm that the circumstances themselves, if the circumstances objectively support this determination, there were three officers on the scene. It was daylight. It was about noon in the middle of a busy street. And as our Supreme Court held in People v. Sorensen, it noticed that it distinguished two other of its cases because, quote, multiple officers were present at the time of the frisks in the other cases, and therefore the officers did not have the same concern for their safety as did the officer here who was alone on a dark road. Mr. Kimmel, how about Justice Turner's question about outright reversal? Your Honor, I think Justice Turner answered his own question that the state did not respond to that argument, which it should be considered waived. And I think on its merits, it's clear that this stopped, developed into something different once Detective Rath found a small amount of marijuana in the purse. Then he searched the car. That supported the car search. He found a small amount there. Then he asked Mindy about it. That evidence was suppressed because it violated Miranda. Do officers typically conduct field sobriety tests when someone's been pulled over because they've been involved in an accident? I'm not aware, Your Honor. I believe it has to be supported on reasonable suspicion, just as the search has to be supported. An officer has to have reasonable suspicion to request someone to do a field sobriety test? I actually don't remember. I also don't, Your Honor. I believe it's either a probable cause standard or it's a Terry basis. I'm not sure. I didn't research it for this case. There is some sort of level. They have to have a reason to do it. They can't do it just to everyone they stop. I know that's a fact. So it would not have been supported. But if they've been in an accident and they're acting nervous and anxious and a bit slow, that might just be reasonable suspicion to request a field sobriety test. It could be, Your Honor. But I think Sergeant Raines' testimony undercuts that. He says she just seemed anxious. And she explained that when she said that she was on an outing. People normally don't run into telephone poles in a parking lot. That's true. But Mindy was an especially bad driver. She has a number of traffic violations. I mean, she wasn't a very good driver, and they said she was a little slow. You're tough. Thank you, Your Honor.  This court will be in recess until 1 o'clock.